UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ANTHONY SCOTT TOLAN,<br><br>　　　　　Defendant. | NO. CR-12-0025-JLQ<br><br>**MEMORANDUM OPINION RE: DEFENDANT'S OBJECTION TO PSR RE: OFFENSE LEVEL COMPUTATION** |

## I.　INTRODUCTION

　　On June 29, 2012, the Defendant and the Government entered into a Plea Agreement pursuant to Fed.R.Crim.P. 11(c)(1)(C). The parties stipulated that a twenty-fourth month term of imprisonment, followed by a three-year term of supervised release was appropriate and binding on the court if the Plea Agreement was accepted. The court accepted the Defendant's guilty plea to the charge of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and deferred ruling on the Plea Agreement until review of the Presentence Report ("PSR").

　　The PSR calculated the advisory Guidelines range for Defendant's offense at 77-97 months. This calculation was based upon the author's application of a base offense level of 20 under U.S.S.G. §2K2.1(a)(4)(A) (final offense level 21 and criminal history category VI) for commission of the instant offense after having sustained a felony conviction of a crime of violence (Washington's Burglary in the Second Degree). Defendant objected to the application of the crime of violence enhancement, arguing that the base offense level was instead a 14 under to U.S.S.G. § 2K2.1(a) (6), thus making the final offense level a 13 and the sentencing range 30-37 months. The Government did not respond to Defendant's objection until directed by the court.

ORDER - 1

On September 14, 2012, the court orally sustained the Defendant's objection to the PSR's offense level computation, but rejected the Plea Agreement as it was not satisfied that the agreed sentence of 24 months, a departure from the applicable guideline range, was an appropriate sentence. This Memorandum Opinion supplements and memorializes the court's conclusion that the Defendant's conviction for Second Degree Burglary under Washington law does not qualify as a crime of violence.

**II.    THE UNDERLYING OFFENSE OF CONVICTION**

On July 28, 2009, the Defendant was initially charged in Whitman County Superior Court with an Information for Residential Burglary and Theft in the Second Degree.  The charging document contended the Defendant "entered and remained unlawfully in the dwelling of Rick Pederson, located at 806 N. Morton St...."  The Defendant ultimately pled to a less serious crime than originally charged:  On September 11, 2009, the Defendant pleaded guilty to an Amended Information alleging a Washington state offense of Burglary in the Second Degree under RCW 9A.52.030(1). The Amended Information to which he pled states that the Defendant unlawfully "entered or remained *in the building of* Rick Pederson, located at 806 N. Morton St..."  He was sentenced to 12 months and one day confinement. Washington's Burglary in the Second Degree statute specifically excludes therefrom the burglary of a dwelling.

Attached to the Second Addendum to the PSR were several state court documents related to Defendant's prior conviction including: (1) Colfax Police Department Incident Reports of Officer Wride and Chief Hickman; (2) a "Summary of Probable Cause" signed by Officer Wride; (3) an Information for Residential Burglary and Theft in the Second Degree dated July 28, 2009; (4) an Amended Information for Burglary in the Second Degree dated September 11, 20012; (5) a Statement of Defendant on Plea of Guilty to Non-Sex Offense; and (6) the Whitman County Superior Court Judgment and Sentence.

The incident report of Officer Wride stated he responded to 806 N. Morton Street, the "residence" of Rick Pederson, regarding a theft of a guitar and amplifier.   There are six references in Officer Wride's report describing the structure as a "house." It states that

1) Pederson explained to Officer Wride that his brother had been "house sitting" for him; 2) that Tolan had wanted to "stay at the house"; 3) that Pederson had left "locking the doors on the west and north sides of the house," believing that "the door on the south side of the house" was already locked; (4) that "Ball and Tolan were the only other people that knew the guitar was in the back room of the house"; (5) that "Pederson and I were in the house the whole time"; and (6) that a neighbor "went around the house." The Summary of Probable Cause refers to the 806 N. Morton St. address as a "residence" and twice it is referenced as a "house."

## III. ANALYSIS

### A. Framework

### 1. §§ 2K2.1, 4B1.2

U.S.S.G. § 2K2.1(a)(4) provides a base offense level of 20 on the felon in possession of a firearm charge if the Defendant has been previously convicted of a "crime of violence." Application Note 13(b) provides that the term "crime of violence" as used in this section has the meaning given under § 4B1.2. There are three categories of crimes which can be crimes of violence. The first category includes any felony that "has an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1). The second category includes the enumerated crimes of "burglary of a dwelling, arson, or extortion" and those involving the "use of explosives." § 4B1.2(a)(2). The final category, sometimes referred to as the residual clause crimes, includes those crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." *Id.*

### 2. Taylor/Shepard Analytical Framework in the Ninth Circuit

To determine whether a conviction for Washington Second Degree Burglary meets the requirements for this enhancement under the Sentencing Guidelines, the court uses the analytical approach set out in *Taylor v. U.S.*, 495 U.S. 575, 598 (1990) and *Shepard v. United States*, 544 U.S. 13, 20 (2005). *United States v. Becker*, 919 F.2d 568, 570 (9th Cir.1990) (extending *Taylor's* categorical approach to ACCA to the Sentencing

ORDER - 3

Guidelines). The categorical approach requires the sentencing court to compare the statutory definition of the prior offense with the definition of "crime of violence," as stated in § 4B1.2. If the statute applicable to the prior conviction required proof of all the elements of one of the federal generic offenses enumerated, then the conviction was, categorically, a crime of violence.

This categorical approach prohibits the court from "delving into the particular facts disclosed by the record of conviction, thus leaving the court normally to 'look only to the fact of conviction and the statutory definition of the prior offense.'" *Shepard*, 544 U.S. at 17 (quoting *Taylor*, 495 U.S. at 602). This limitation serves "two important purposes": it "avoids the spectacle of a 'trial over trials'" and it "avoids situations where the government arguably could prove that the defendant actually committed a greater offense, one that would satisfy the generic crime, but would deprive the defendant of the benefit of his conviction for (or plea to) a lesser crime." *U.S. v. Aguila-Montes De Oca*, 655 F.3d 915, 929 (9th Cir. 2011)(citing *Taylor*, 495 U.S. 601-2). [I]t does not matter what acts the defendant committed; rather, the relevant question is what he was *convicted* of." *Id*. at 928 (emphasis in original).

However, in a "narrow range of cases" the law permits the sentencing court to modify this approach and go beyond the mere fact of conviction. The "modified categorical approach" enables the court to look to judicial records to determine (1) what facts the state conviction necessarily rested on; and (2) whether these facts satisfy the crime of violence definition. *Aguila-Montes De Oca*, 655 F.3d 936.

Defining this "narrow range of cases" when it is permissible to depart from the formal categorical approach is an area of evolving case law and a circuit court split. The circuit differences have resulted in differing conclusions specifically on when burglary convictions qualify as a crime of violence. In the past, courts in the Ninth Circuit (and other circuits) have simply applied the modified categorical approach any time the statute of conviction did not qualify categorically and it was ambiguous whether the crime met the crime of violence definition. The Ninth Circuit's recent en banc decision in *United*

ORDER - 4

*States v. Aguila-Montes De Oca, supra,* refines this analytical approach by defining "to what kinds of statutes the modified categorical approach can be applied..." *Id.* at 931. It emphasizes that, before applying the modified categorical approach, courts must inquire whether the statute of prior conviction is of the sort that permits looking beyond a categorical analysis of the definition of the state offense. *Id.*

Courts, including *Aguila-Montes De Oca*, have uniformly held that the modified categorical approach is properly used when the statue of conviction is a "divisible statute" -- one containing an explicit finite list of statutory phrases describing alternatives – either several crimes or a single crime with several possible means of commission, at least one of which would satisfy the crime of violence definition. The modified approach is properly used for the purpose of determining which statutory phrase covered the prior conviction. *Aguila-Montes de Oca* also overruled prior Ninth Circuit precedent in further expanding the proper application of the modified categorical approach to "categorically overbroad," or so-called "missing element" (non-divisible) statutes. Unlike "divisible statutes" this type of statute does not contain a finite list of alternatives and may lack as a specific element a requirement necessary to qualify as a crime of violence, or the law may simply be defined in a manner broad enough that it proscribes both conduct covered by the enhancement and not covered by the enhancement. Also in this instance, the court may consult the record of conviction to determine whether the conviction "necessarily rested" on facts satisfying the definition of a crime of violence.

When a defendant is convicted in conjunction with a guilty plea, the sentencing court applying the modified categorical approach may look to "the statement of factual basis for the charge ... shown by a transcript of plea colloquy or by written plea agreement presented to the court." *Shepard v. United States*, 544 U.S. 13, 20 (2005) (internal citation omitted). When a defendant stipulates during his plea colloquy that a police report, probation report or similar document contains the factual basis for his plea, the court may also examine the incorporated document. *See id.; United States v. Almazan–Becerra*, 537 F.3d 1094, 1097–1100 (9th Cir. 2008); *United States v.*

ORDER - 5

*Espinoza–Cano*, 456 F.3d 1126, 1131–32 (9th Cir. 2006). The other limitation in applying the modified categorical approach, is that the court may take into account only facts on which the defendant's conviction "necessarily rested." *Aguila–Montes De Oca*, 655 F.3d at 935–36.

### B. Categorical Analysis

There is no contention that Washington's Second Degree Burglary statute has as an element "the use, attempted use, or threatened use of physical force against the person of another." The question here is whether the second degree burglary conviction meets the federal definition of "burglary of a dwelling" or § 4B1.2's residual clause ("otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another.").

### 1. Federal Definition of "*Burglary of a Dwelling*"

According to 2003 Ninth Circuit precedent, the federal definition of "burglary of a dwelling" is "the *Taylor* [generic] definition of burglary, with the narrowing qualification that the burglary occur in a dwelling." *U.S. v. Wenner*, 351 F.3d 969, 973 (9th Cir. 2003)). Accordingly, the definition of "burglary of a dwelling" is: an unlawful or unprivileged entry into, or remaining in, a building or other structure *constituting a dwelling*, with the intent to commit a crime. "Building" or "structure" has been interpreted to mean "a structure designed for occupancy that is intended for use in one place." *U.S. v. Grisel*, 488 F.3d 844 , 848 (9th Cir. 2007). This federal definition of "burglary of a dwelling" includes a person's residential house. *Reina- Rodriguez v. U.S.*, 655 F.3d 1182 (9th Cir. 2011). "Non-buildings adapted for overnight accommodation," do not *categorically* meet this definition (i.e. automobiles, booths, tents, boats, and railway cars), though in some circumstances these structures could be adapted for accommodation and might qualify as a building. *Grisel*, 488 F.3d at 851 (9th Cir. 2007).

### 3. Washington State Definition of Second Degree Burglary

The statute of conviction, Burglary in the Second Degree, provides that a person is guilty of the crime if, "with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building ***other than* a vehicle or a <u>dwelling</u>**."

ORDER - 6

RCW 9A.52.030 (emphasis added). State law definitions of building and dwelling are broader than the federal definitions. "Building" includes "its ordinary meaning" and:

> any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods; each unit of a building consisting of two or more units separately secured or occupied is a separate building.

RCW 9A.04.110(5). Dwelling is defined as: "any building or structure, though movable or temporary, or a portion thereof, which is used or ordinarily used by a person for lodging." RCW 9A.04.110(7). The state definition of building actually includes dwellings, and "dwelling" under state law covers places "movable or temporary" such as fenced areas, railway cars, or a cargo container, whereas the federal definition categorically does not include those items.

As the Washington statutory definition of Second Degree Burglary includes burglaries of buildings which are non-dwellings, the Washington Second Degree Burglary statute does not categorically meet the definition of "burglary of a dwelling." The Ninth Circuit has previously so held in reviewing Washington's burglary statutes. In *U.S. v. Wenner*, 351 F.3d 969 (9th Cir. 2003), the court held that residential burglary under Washington state law was not a categorical crime of violence; and in 2006, *Guerrero-Velasquez* held that where second degree burglary is an inferior degree [as opposed to a lesser included] of residential burglary, it likewise is not a categorical crime of violence. *U.S. v. Guerrero-Velasquez*, 434 F.3d 1193, 1196 n. 3 (9th Cir. 2006).

### 3. The "Catch All" Residual Clause

The more critical question here, is whether the crime is defined in such a way that it *categorically* cannot meet the § 4B1.2 definition, including its residual clause covering crimes which "otherwise involves conduct that presents a serious potential risk of physical injury to another." Does the specific exclusion (not just an omission) of "dwellings" from second degree burglary mean that a violation of the statute can never be a § 4B1.2 predicate under the "residual clause"?

There are two ways in which a crime can fall within the residual clause. The first way is the categorical approach, under which the court considers "whether the elements

ORDER - 7

of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.' " *Sykes v. United States*, 131 S.Ct. 2267, 2272 (2011). If the elements of an offense are such that any conviction for violating that statute will fall within the scope of the risk of serious injury residual clause, the offense is categorically a crime of violence under the residual clause. The second way that a crime can come within the risk of serious injury residual clause is the modified categorical approach, which can be applied where some, but not all, of the violations of a particular statute will involve the requisite risk of serious injury violence. Importantly, however, the Ninth Circuit has advised that "even though certain conduct... may present a serious potential risk of physical injury to another, it may still be excluded under the [residual] clause if including it would render the inclusion of the [enumerated offense] surplusage." *See also United States v. Matthews*, 374 F.3d 872, 876 (9th Cir. 2004) (emphasis added).

All forms of burglary, including Washington's second degree burglary of "a building other than a vehicle or dwelling" (such as a grocery store or other commercial establishment) could pose serious potential risk of physical injury to others.  However, burglary of a non-dwelling must be excluded from the risk of serious injury residual clause, because to conclude otherwise would render § 4B1.2's enumerated offense, burglary of a dwelling, surplusage.  Therefore, categorically, a conviction in Washington for Second Degree Burglary should not and cannot not meet § 4B1.2's definition of "crime of violence."

The court recognizes this conclusion might appear, at first glance, to be at odds with the Ninth Circuit's comment in *U.S. v. Guerrero-Velasquez,* 434 F.3d 1193, 1196 n. 3 (9th Cir. 2006) stating in a footnote: "the statutory definition of second-degree burglary, which expressly excludes burglaries of dwellings, does not render it categorically a nonviolent crime for purposes of the advisory federal sentencing guidelines." *Id.* at 1197, n. 5.   Like in *Guerrero-Velasquez* the Defendant here was originally charged with Washington's First Degree Burglary, but pleaded guilty to Second

of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.' " *Sykes v. United States*, 131 S.Ct. 2267, 2272 (2011). If the elements of an offense are such that any conviction for violating that statute will fall within the scope of the risk of serious injury residual clause, the offense is categorically a crime of violence under the residual clause. The second way that a crime can come within the risk of serious injury residual clause is the modified categorical approach, which can be applied where some, but not all, of the violations of a particular statute will involve the requisite risk of serious injury violence. Importantly, however, the Ninth Circuit has advised that "even though certain conduct... may present a serious potential risk of physical injury to another, it may still be excluded under the [residual] clause if including it would render the inclusion of the [enumerated offense] surplusage." *See also United States v. Matthews*, 374 F.3d 872, 876 (9th Cir. 2004) (emphasis added).

All forms of burglary, including Washington's second degree burglary of "a building other than a vehicle or dwelling" (such as a grocery store or other commercial establishment) could pose serious potential risk of physical injury to others.  However, burglary of a non-dwelling must be excluded from the risk of serious injury residual clause, because to conclude otherwise would render § 4B1.2's enumerated offense, burglary of a dwelling, surplusage.  Therefore, categorically, a conviction in Washington for Second Degree Burglary should not and cannot not meet § 4B1.2's definition of "crime of violence."

The court recognizes this conclusion might appear, at first glance, to be at odds with the Ninth Circuit's comment in *U.S. v. Guerrero-Velasquez,* 434 F.3d 1193, 1196 n. 3 (9th Cir. 2006) stating in a footnote: "the statutory definition of second-degree burglary, which expressly excludes burglaries of dwellings, does not render it categorically a nonviolent crime for purposes of the advisory federal sentencing guidelines." *Id.* at 1197, n. 5.   Like in *Guerrero-Velasquez* the Defendant here was originally charged with Washington's First Degree Burglary, but pleaded guilty to Second

Degree Burglary.

The *Guerrero-Velasquez* court went on to apply the modified categorical approach (without analyzing the type of statute involved), finding that where the charging document to which the Defendant pled guilty specifically alleged the defendant burglarized a residence at a particular street address, the court could take judicial notice of the fact that the Defendant burglarized a dwelling for purpose of applying the Guidelines. 434 F.3d 1193, 1196 n. 3 (9th Cir. 2006).   Unlike the charging document in *Guerrero-Velasquez,* the charging document in this case only states that the Defendant entered a "building," and the crime of conviction is defined as a "building other than a vehicle or dwelling." The charging document itself in this case does *not* make clear the building burglarized was a "dwelling."

The court also notes the *Guerrero-Velasquez* case was sharply criticized in a concurring opinion in *Aguila-Montes De Oca* as "in dramatic conflict with *Taylor*." *Aguila-Montes De Oca*, 655 F.3d 915, 963 (expressing fear the majority's version of the modified categorical approach "invites a parade of *Guerrero-Velasquezes*.").

### D. Modified Categorical Approach Does not Apply

Pursuant to *Aguila-Montes De Oca*, the court must determine whether the statute of the prior conviction is the sort that permits looking beyond a categorical analysis of the definition of the state offense –  the step the *Guerrero-Velasquez* panel did not perform. Washington's Second Degree Burglary is neither a "divisible statute" or a "missing element" "categorically overbroad" statute as they are defined in *Aguila-Montes De Oca*. Where the statutory definition of the state burglary conviction specifically ***excluded*** "dwellings" (is not just "missing" the requirement) it does not broadly cover conduct which could potentially qualify as a crime of violence. Accordingly, the modified categorical approach cannot be utilized in order to rely upon the documents submitted to this court along with the PSR.

### IV.   CONCLUSION

The court is precluded from performing the modified categorical analysis in this

instance, even though, if it applied, the court would find the conviction necessarily rested upon conduct involving the burglary of a *man's house* -- the quintessential "burglary of a dwelling" imagined by the Sentencing Commission. The court's conclusion is in line with the intent of *Taylor* which "avoids situations where the government arguably could prove that the defendant actually committed a greater offense, one that would satisfy the generic crime, but would deprive the defendant of the benefit of his conviction for (or plea to) a lesser crime." *Aguila-Montes De Oca*, 655 F.3d at 928-29. "[I]t does not matter what acts the defendant committed; rather, the relevant question is what he was convicted of." *Id*. at 928. The Defendant was convicted of burglarizing a building "other than a vehicle or dwelling." U.S.S.G. § 4B1.2 is specifically concerned with the risk of violence in people's *living space*. Accordingly, Defendant's conviction categorically, cannot, qualify as a crime of violence under U.S.S.G. § 4B1.2.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 24th day of September, 2012.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE